

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00857-CV

In the Interest of **J.L.A.**, a Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-02800
Honorable Richard Garcia, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  May 7, 2014

AFFIRMED

In two issues, R.A. complains of an order terminating his parental rights to his son, J.L.A.

We affirm.

### BACKGROUND

On November 27, 2012, the Department of Family and Protective Services filed an original

petition for protection of a child, for conservatorship, and for termination of parental rights. The

child named in the petition was J.L.A. The petition alleged that R.A. was J.L.A.'s alleged father

and sought to terminate R.A's parental rights on multiple grounds, relying on both sections

161.002 and 161.001 of the Texas Family Code.

On November 14, 2013, the case was tried to the court. The only witness to testify at trial

was a Department caseworker. According to the caseworker's testimony, the Department became

involved in this matter immediately following J.L.A.'s birth because J.L.A. was born with drugs in his system, J.L.A. exhibited symptoms of drug withdrawal, and his mother admitted to using cocaine and heroin while she was pregnant. J.L.A. was placed with his grandparents, who continued to care for him at the time of trial. The Department created a service plan for J.L.A.'s parents and communicated it to them. Neither parent successfully completed the service plan. Prior to trial, J.L.A.'s mother signed a document voluntarily relinquishing her parental rights, and the document was filed in the trial court. R.A. was in a federal prison for a drug offense, and he had been incarcerated since the beginning of the case. R.A. was supposed to be incarcerated for a total of seven years. R.A. had not completed his service plan. In fact, to the caseworker's knowledge, R.A. had not engaged in any form of services. Nor had R.A. seen J.L.A. or had any form of contact with the child during the case. The caseworker was of the opinion that termination of both parents' parental rights was in J.L.A.'s best interest because neither parent had taken the opportunity to participate in services or met the goals outlined in the service plan.

On November 22, 2013, the trial court signed an order terminating both parents' parental rights. R.A.'s parental rights were terminated based on sections 161.002 and 161.001 of the Texas Family Code. According to the termination order, the trial court found by clear and convincing evidence that R.A., after having waived service of process or being served with citation in this suit, did not respond by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.002 (West 2014). Alternatively, the trial court found by clear and convincing evidence that R.A. (1) constructively abandoned J.L.A., (2) failed to comply with the service plan, and (3) knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for J.L.A. for not less than two years from the date of filing the petition. *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O), (Q) (West 2014). Finally, the trial court found by

clear and convincing evidence that termination of R.A.'s parental rights was in J.L.A.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(2). R.A. appealed.

## SECTIONS 161.001 AND 161.002

Under section 161.001 of the Texas Family Code, parental rights may be terminated only upon proof, by clear and convincing evidence, that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001. Under section 161.002(b)(1) of the Texas Family Code, "The rights of an alleged father may be terminated if [] after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160." *See* TEX. FAM. CODE ANN. § 161.002(b)(1). "However, if the alleged father files an admission of paternity, his rights may only be terminated if the Department proves by clear and convincing evidence one of the grounds for termination in Section 161.001(1) and that termination is in the child's best interest." *In the Interest of U.B.*, No. 04-12-00687-CV, 2013 WL 441890, at *1 (Tex. App.—San Antonio Feb. 6, 2013, no pet.).

## FAILURE TO ADMIT PATERNITY

In his first issue, R.A. argues the trial court erred when it terminated his parental rights based on his failure to admit paternity. There are no formalities that must be observed when filing an admission of paternity or for such an admission to be effective. *See id*., at *2 (holding alleged father's letter to the court and his trial testimony constituted an admission of paternity within the meaning of section 161.002(b)(1)); *In the Interest of K.W.*, 138 S.W.3d 420, 430 (Tex. App.—Fort Worth 2004, pet. denied) (holding admissions of paternity in letters to the Department and the trial court were sufficient to defeat section 161.002(b)(1)). In fact, by appearing at trial and admitting that he is the child's father, an alleged father triggers his right to require the Department to prove one of the grounds for termination under section 161.001(1) and that termination is in the best

interest of the child. *U.B.*, 2013 WL 441890, at \*2; *Tolliver v. Texas Dept. of Family & Prot. Serv.*, 217 S.W.3d 85, 105 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Here, R.A. argues that even though he did not file an admission of paternity or a counterclaim for paternity, his appearance and participation in the trial court was sufficient to trigger his right to have the Department prove one of the grounds for termination listed in section 161.001(1). R.A. retained counsel to represent him in this case, who was present at hearings, maintained that R.A. was J.L.A.'s father, and advocated against termination of J.L.A.'s parental rights. The Department concedes that given these circumstances and the relevant case law, it was error to terminate R.A.'s parental rights under 161.002(b)(1). *See Tolliver*, 217 S.W.3d at 105 (holding the trial court erred in terminating parental rights under section 161.002(b)(1), when the alleged father appeared at trial, asserted paternity, and opposed the termination of his parental rights). This error, however, does not necessarily require reversal of the termination order, which was also based on section 161.001.

Finding a single ground under section 161.001(1) is sufficient to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In the Interest of A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (affirming termination decree based on one ground without reaching second ground found by fact finder and challenged by appellant). Thus, notwithstanding the Department's concession, we must affirm the termination order unless it cannot be upheld under section 161.001. We, therefore, turn to R.A.'s second issue, which challenges the sufficiency of the evidence to support the trial court's finding that termination was in J.L.A.'s best interest.

## BEST INTEREST OF THE CHILD

In his second issue, R.A. argues the evidence was legally and factually insufficient to show that termination of his parental rights was in the child's best interest. To determine if the evidence

is legally sufficient in a parental termination case, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). To determine if the evidence is factually sufficient in a parental termination case, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

Although parental rights are of constitutional magnitude, they are not absolute. *In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id*. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In the Interest of R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). But there is also a presumption that the prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014).

The Texas Supreme Court has articulated a non-exhaustive list of factors that may be considered when determining the best interest of the child: (1) the child's desires, (2) the child's physical and emotional needs now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental ability of the individuals seeking custody, (5) the programs available to assist these individuals seeking custody, (6) the plans for the child by the individual or agency seeking custody, (7) the stability of the home or proposed placement, (8) the parent's acts or omissions that may indicate the existing parent-child relationship is not a proper one, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-

72 (Tex. 1976). The absence of evidence about some of the *Holley* factors does not preclude a fact finder from forming a strong conviction or belief that termination is in a child's best interest. *C.H.*, 89 S.W.3d at 27. And, the same evidence may be probative of both the termination grounds under section 161.001(1) and the best interest of the child under section 161.001(2). *Id.* at 28 (citing *Holley*, 544 S.W.3d at 370).

The crux of R.A.'s argument is that, when the *Holley* factors are applied to the evidence, the evidence is insufficient to support termination of his parental rights. According to R.A., "[t]he only evidence really brought forth by the Department" is that he is serving a "seven[-]year federal prison sentence for drugs." R.A. argues that "[w]hile such a conviction is not ideal, it in and of itself is not sufficient grounds to terminate [parental] rights." While a parent's imprisonment is not automatic grounds for termination, it is a factor that may be considered in determining the child's best interest. *In the Interest of R.P.*, No. 04-13-00313-CV, 2013 WL 5762881, at *3 (Tex. App.—San Antonio Oct. 23, 2013, no pet.); *In the Interest of C.L.C.*, 119 S.W.3d 382, 399 (Tex. App.—Tyler 2003, no pet.).

R.A. further argues that there is "no evidence of [R.A.'s] ability to work [on] a service plan or in fact that [the Department] offered him services." The record, however, shows otherwise. The caseworker testified on cross-examination that another Department caseworker had seen R.A. at the facility where he was incarcerated and told R.A. about the services that were offered at the facility. The caseworker also testified that documents existed showing that R.A. was given an opportunity to work on the service plan while he was incarcerated, although she did not have the documents with her at trial.

In sum, the evidence presented in this case addressed several *Holley* factors, including J.L.A.'s physical and emotional needs, the Department's plans for J.L.A., and the stability of J.L.A.'s placement. During the year this case was pending, R.A. was unable to care for J.L.A.'s

physical and emotional needs. R.A. had not seen J.L.A. or had any form of contact with J.L.A. R.A. was incarcerated when J.L.A. was born and would remain incarcerated for the foreseeable future. A family service plan was created and goals were set for R.A., but R.A. did not perform the service plan. Further, J.L.A. had been cared for by his grandparents, who were prepared to adopt him. Based on all of the evidence before it, we conclude that the trial court could have formed a firm belief or conviction that terminating R.A.'s parental rights was in J.L.A.'s best interest.

## CONCLUSION

We have determined the evidence was legally and factually sufficient to support the trial court's finding that terminating R.A.'s parental rights was in J.L.A.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(2). Additionally, R.A. does not challenge the sufficiency of the evidence to support the findings that he: (1) constructively abandoned J.L.A., (2) failed to comply with the service plan, and (3) knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for J.L.A. for not less than two years from the date of filing the petition. *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O), (Q). We, therefore, affirm the trial court's termination order.

Karen Angelini, Justice